# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SUSAN MICK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-06-549-HE |
| ) | |
| MICHAEL J. ASTRUE,[1] ) | |
| COMMISSIONER OF THE SOCIAL ) | |
| SECURITY ADMINISTRATION, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

Plaintiff, Ms. Susan Mick, brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of Defendant Commissioner's final decision denying her application for disability insurance benefits. The matter has been referred for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B) and (C). The Commissioner has answered and filed the administrative record (AR). Both parties have briefed their respective positions, and the matter is now at issue. For the reasons stated below, it is recommended that the Commissioner's decision be reversed and remanded for further proceedings consistent with this Report and Recommendation.

**I.     Procedural Background**

Plaintiff's January 7, 2004, application for disability benefits was denied initially and upon reconsideration. AR 43-45; 23-24. Upon Plaintiff's request, an Administrative Law

---

[1]Michael J. Astrue became Commissioner of the Social Security Administration on February 12, 2007. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue is hereby substituted for Commissioner Jo Anne B. Barnhart as the defendant in this suit.

Judge (ALJ) held a hearing on October 13, 2004. AR 218-246.[2] The ALJ issued an unfavorable decision on May 23, 2005. AR 11-22.

The Appeals Council denied Plaintiff's request for review on April 28, 2006, and the decision of the ALJ became the final decision of the Commissioner. AR 4-6.

## II.     Background and Medical Record

Plaintiff applied for disability benefits alleging disabling mental impairments. She was 43 years old on the date of the ALJ's decision. AR 43. Plaintiff is a high school graduate with approximately three years of college credits. AR 223. Plaintiff worked as a telemarketer for eleven years, and she has also worked as a secretary. AR 224. Plaintiff was a student at Oklahoma State University and received mental health counseling at University Counseling Services until she withdrew from the university in May 2004. AR 178. In July 2004, she received medication for her psychological problems at the Laureate Psychiatric Clinic and Hospital. AR 174-176.

Plaintiff has been diagnosed with major depression disorder, generalized anxiety disorder, attention deficit disorder and personality disorder. AR 127, 179. She has not alleged any physical disorders or limitations.

---

[2]The transcript of the hearing is of little use to this Court's review because of the number of inaudible responses and questions. A vocational expert, Michael Wiseman, attended the hearing, but the ALJ did not call him to testify.

**III.    The Administrative Decision**

The ALJ applied the five-step sequential evaluation process, *see Fisher-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005), and found at step one that Plaintiff had not engaged in substantial gainful activity since the amended disability onset date, March 15, 2003. AR 15, 21. At step two, the ALJ listed Plaintiff's impairments as major depression, anxiety disorder, and personality disorder.[3] He stated that these impairments are severe within the meaning of the Social Security regulations. AR 16, 21. At step three, the ALJ determined that Plaintiff's severe impairments do not meet or equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 16, 22. At step four, the ALJ determined that Plaintiff has no exertional limitations. He further determined that Plaintiff's non-exertional mental limitations preclude her from jobs requiring more than minimal contact with other employees or supervisors. AR 20. Without the benefit of testimony from a vocational expert and without analysis of the mental demands of Plaintiff's past relevant work, the ALJ determined that Plaintiff could perform her past relevant work as a telemarketer and secretary. AR 21.

---

[3]On January 15, 2004, Dr. Baiba Ercum stated that Plaintiff had difficulty with concentration and organizing her work. Dr. Ercum further stated that psychological testing confirmed attention deficit disorder. AR 127. The ALJ eventually acknowledged that Plaintiff has been diagnosed with attention deficit disorder, AR 17-18, but he did not include attention deficit disorder in the list of severe impairments, and he provided no explanation for this omission. Although a severe impairment must "significantly limit an individual's physical or mental ability to do basic work activities," 20 C.F.R. § 404.1521, the Tenth Circuit has repeatedly held that this is a "de minimus" showing at step two of the five-step process. *See Grogan v. Barnhart*, 399 F.3d 1257, 1263 (10th Cir. 2005); *Hawkins v. Chater*, 113 F.3d 1162, 1169 (10th Cir. 1997) (*citing Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988)). On remand, the Commissioner should consider all severe impairments supported by the evidence.

**IV.    Issues Presented for Judicial Review**

Plaintiff presents the following issues for judicial review: (1) whether the ALJ's credibility determination is supported by substantial evidence; (2) whether the ALJ's determination of Plaintiff's residual functional capacity (RFC) is supported by substantial evidence; and (3) whether the ALJ erred in determining that Plaintiff could return to her past relevant work as telemarketer and secretary.

**V.    Standard of Review**

Because the Appeals Council denied review, the ALJ's decision is the Commissioner's final decision for purposes of this appeal. *Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003). Judicial review of the Commissioner's final decision is limited to determining whether the factual findings are supported by substantial evidence in the record as a whole and whether the correct legal standards were applied. *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal*, 331 F.3d at 760 (quotation omitted). A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it. *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004). The court considers whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases, but the court does not reweigh the evidence or substitute its own judgment for the Commissioner's. *Hackett*, 395 F.3d at 1172 (quotations and citations omitted).

**VI.    Analysis**

    **A.    Claim One – The ALJ's Credibility Assessment**

Plaintiff contends that the ALJ's credibility assessment is not supported by substantial evidence. "Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quotation omitted). Nevertheless, a court may review an ALJ's credibility findings to ensure that the ALJ's factual findings underlying the credibility determination are "closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Hackett*, 395 F.3d at 1173 (quotation omitted).

    The ALJ summarized Plaintiff's testimony concerning her symptoms as follows:

> [Plaintiff] does not like being around people. She was having difficulty at her job because she was not personable[,] and she was criticized constantly. When she has panic attacks[,] they can last most of the day. She was diagnosed with a bipolar illness in November 2003. She has manic episodes that last all day sometimes. She also gets anxious and cannot sleep. Her progress is up and down. She goes to counseling once a week. Her medicine causes her to be sleepy[,] and she naps about one to one and one-half hours in the afternoon. She has been diagnosed with attention deficit disorder.

AR 18. The ALJ listed several reasons for his finding that Plaintiff's credibility is "diminished." First, the ALJ states that although Plaintiff alleges anxiety, Dr. Ercum did not find "clear cut symptoms of a panic attack." AR 19. The ALJ apparently believes that a person has no anxiety unless she exhibits "clear cut symptoms of a panic attack." But Dr. Ercum did diagnose Plaintiff with "generalized anxiety disorder" in addition to major

depression and attention deficit disorder. AR 127. Therefore, the lack of the classic symptoms of a panic attack does not undermine the credibility of Plaintiff's allegation of anxiety.

Second, the ALJ noted that in July 2004 Plaintiff had been rated at 65 on the Global Assessment of Functioning (GAF) Scale[4] by her treating physician. AR 19, 174. A GAF score is a subjective determination based on a scale of 1-100 of "the clinician's judgment of the individual's overall level of functioning" at the time of the evaluation. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (4th ed. 2000) at 30 and 32. Because of the subjective nature of a GAF rating, a GAF score standing alone cannot be used to discredit a claimant's own subjective account of her symptoms and limitations. *Cf. Bolton v. Barnhart*, 117 Fed. Appx. 80, 86 (10th Cir. Nov. 24, 2004) (holding that a low GAF score was not a sufficient basis for reversing the ALJ's credibility determination) (unpublished op.).

Additionally, the ALJ pointed out an inconsistency on a medical form. At the top of the form, the date was recorded as "July 2, 2004," while on the bottom of the form the date was recorded as "July 24, 2004." AR 19, 176. It appears, however, that the inconsistent dates were recorded by the health care professional who filled out the Medication

---

[4] A GAF score of 65 indicates some mild symptoms, such as depressed mood or mild insomnia, or some difficulty in social, occupational or school functioning such as occasional truancy, or theft within the household, but generally functioning pretty well. A person with a GAF of 65 would be expected to have some meaningful interpersonal relationships. *See* Global Assessment of Functioning (GAF) Scale, http://dpa.state.ky.us/library/manuals/mental/Ch22.html

Assessment form. It is unclear why the ALJ found this inconsistency to be material or why he believed this inconsistency should reflect negatively on Plaintiff's credibility.

Finally, the ALJ cited one isolated medical record which states that on May 13, 2004, Plaintiff's major depression and generalized anxiety disorder were in partial remission. AR 19, 179. The fact that Plaintiff was less anxious and depressed the month during which she dropped out of school does not indicate that her mental impairments are cured or that she was able to work thereafter. The record suggests that, having removed the stress of school from her life, Plaintiff's anxiety and depression were temporarily improved. In sum, the credibility assessment made by the ALJ is not closely and affirmatively linked to substantial evidence in the record.

### B. Claims Two and Three – The ALJ's Step Four Findings

Plaintiff contends that the ALJ's assessment of her RFC is not supported by substantial evidence in the record. Further, Plaintiff contends that the ALJ erred in determining that she could return to her past relevant work as a telemarketer or secretary without determining the mental demands of her past relevant work and comparing those demands with her RFC. Plaintiff's points are well taken.

There are three phases of evaluation an ALJ must complete at step four of the sequential evaluation:

> In the first phase, the ALJ must evaluate a claimant's physical and mental residual functional capacity (RFC), and in the second phase, he must determine the physical and mental demands of the claimant's past relevant work. In the final phase, the ALJ determines whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical

limitations found in phase one.  At each of these phases, the ALJ must make specific findings.

*Doyal*, 331 F.3d at 760 (*quoting Winfrey v. Chater*, 92 F.3d 1017 (10th Cir. 1996) (citations omitted)).  The ALJ's evaluation of a claimant's RFC must include specific findings and an explanation of how the administrative law judge analyzed the evidence and resolved inconsistencies or ambiguities.  *See* SSR 96-8p.[5]

In this case, the record contains two assessments of Plaintiff's mental limitations offered by agency doctors.  C. M. Kampschaefer, Psy. D., completed a Psychiatric Review Technique form (PRT) on February 19, 2004.  The form reflects a finding that Plaintiff has no restrictions of activities of daily living, no difficulty in maintaining social functioning, mild difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation.  AR 142.  The PRT supports the ALJ's step three conclusion that Plaintiff's impairments do not meet or equal a listed impairment.

After the administrative hearing, the ALJ ordered a consultative mental examination. AR 244.  Dr. Richard H. Swink, PhD., talked with Plaintiff and administered the Wechsler Adult Intelligence Scale – III.  Dr. Swink found moderate restrictions in Plaintiff's ability to work in coordination with or proximity to others without being distracted by them, in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable

---

[5]This ruling is entitled "Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims."

number and length of rest periods, and in her ability to accept instructions and respond appropriately to criticism from supervisors.  AR 215.

In formulating Plaintiff's RFC, the ALJ found that Plaintiff has no exertional limitations and no non-exertional (physical) limitations.  As to her mental, non-exertional limitations, the ALJ found that Plaintiff's only restriction was that she could have only minimal contact with other employees or with supervisors.  AR 20.

The ALJ's RFC reflects the ALJ's adoption of two of Dr. Swink's conclusions – that Plaintiff would be limited to jobs in which she would have only minimal contact with other employees and with supervisors.  The ALJ did not, however, include any restrictions in his RFC to reflect Dr. Swink's opinion that Plaintiff would have a moderate limitation in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.  *See* AR 215.

An ALJ is not "bound by findings made by State agency or other program physicians and psychologists[.]"  *See* SSR-96-6p, 1996 WL 374180 at *2.  Nevertheless, an ALJ must consider such opinions, and must include findings to support the RFC.  The ALJ states that he carefully considered the medical source opinion of the state medical examiner in assessing Plaintiff's RFC.  The ALJ does not explain, however, why he disregarded Dr. Swink's significant finding regarding the effect Plaintiff's mental limitations would have on her ability to complete a workday or workweek and maintain consistency and pace without being interrupted by her mental limitations.  Rather, the ALJ stated the general principle that "[a]

9

conclusion that the claimant's condition is more or less limiting than was concluded by the state examiners is justified based on an independent evaluation of the evidence, which includes material evidence that was not before the state examiners." AR 21.  Although the ALJ correctly recited a general principle gleaned from SSR 96-6p,[6] the ALJ did not discuss the evidence upon which he relied in rejecting one of Dr. Swink's conclusions.  On remand, the ALJ should make specific finding to support his RFC evaluation.

After evaluating a claimant's RFC, an ALJ must obtain adequate "factual information about those work demands which have a bearing on the medically established limitations." SSR 82-62.[7]  The ALJ must then make specific and detailed findings concerning the physical and mental demands of the past jobs.  *See id.*, 1982 WL 31386 at *4.  *See also Doyal*, 331 F.3d at 760.  According to Plaintiff, the ALJ erred at step four of the sequential analysis in failing to develop the record with factual information regarding the demands of Plaintiff's past relevant work and an analysis as to whether Plaintiff could meet the demands of her past relevant work given her RFC.

Although a vocational expert was present at the administrative hearing, the VE was not asked to testify.  AR 245.  The ALJ considered Plaintiff's past relevant work as telemarketer and secretary.  Citing no source, the ALJ determined that both jobs were

---

[6]This ruling is entitled, "Policy Interpretation Ruling Titles II and XVI: Consideration of Administrative Findings of Fact by State Agency Medical and Psychological Consultants and Other Program Physicians and Psychologists at the Administrative Law Judge and Appeals Council Levels of Administrative Review: Medical Equivalence."

[7]This ruling is entitled, "Titles II and XVI:  A Disability Claimant's Capacity to Do Past Relevant Work, in General."

unskilled with an actual exertional level of medium and a customary exertional level of sedentary. AR 21. But Plaintiff does not allege exertional limitations, and the ALJ did not discuss either job in terms of Plaintiff's mental limitations. The ALJ simply stated:

> The claimant has enough residual functional capacity to meet the demands of her past relevant work as a telemarketer and secretary. Accordingly, inasmuch as the claimant can return to her past relevant work, she has failed to carry [her] burden of proof at step 4, and is therefore not disabled.

AR 21. The ALJ made no findings regarding the mental demands of Plaintiff's past relevant work, and, therefore, there is no evidence to support the ALJ's assertion that Plaintiff could return to her past relevant work. This error requires reversal. On remand, the Commissioner should carefully consider Plaintiff's mental limitations compared to the demands of her past relevant work before making a step four determination that Plaintiff is not disabled.

## RECOMMENDATION

It is recommended that the decision of the Commissioner be reversed and remanded for further proceedings consistent with this Report and Recommendation.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to object to this Report and Recommendation. *See* 28 U.S.C. § 636. Any objections must be filed with the Clerk of the District Court by May __17th__, 2007. *See* LCvR72.1. The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

## **STATUS OF REFERRAL**

This Report and Recommendation terminates the referral by the District Judge in this matter.

ENTERED this   27th   day of April, 2007.

*/s/ Valerie K. Couch*

VALERIE K. COUCH
UNITED STATES MAGISTRATE JUDGE